

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| CITY OF SKIDMORE, MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD85487 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | May 16, 2023 |
| RICKIE L. STANTON, | ) | |
| | ) | |
| Appellant. | ) | |

### Appeal from the Circuit Court of Nodaway County, Missouri
### The Honorable Robert L. Rice, Judge

### Before Division Two: Edward R. Ardini, Jr., Presiding Judge, and
### Lisa White Hardwick and Karen King Mitchell, Judges

Rickie Stanton appeals his conviction for maintaining a nuisance in violation of

the City of Skidmore's nuisance ordinance. Stanton raises six points on appeal. First, he

asserts the trial court erred in denying his motion to dismiss, motion for judgment of

acquittal at the close of the City's case, and motion for judgment of acquittal

notwithstanding the verdict/motion for new trial because the charging document failed to

state an offense in that it did not plead facts as required by Rule 37.35.[1] Second, he

---

[1] All Rule references are to the Missouri Supreme Court Rules (2021).

argues the court erred in awarding attorney's fees to the City because there is no statute or contract authorizing fees in this case. Third, he claims the court erred in issuing an injunction against him because municipal courts lack authority to issue injunctions. Fourth, he contends the court erred in awarding attorney's fees and issuing an injunction because the charging document's prayer for relief did not mention fees or injunctive relief. Fifth, he asserts the court erred in awarding $8,000 in attorney's fees to the City because there was insufficient evidence to support that amount and the amount is unconscionable. Lastly, he argues the court erred in denying his motion for acquittal at the close of the City's case and motion for judgment notwithstanding the verdict/motion for new trial because there was insufficient evidence of guilt. Finding that the trial court erred in awarding attorney's fees and an injunction, we reverse in part and affirm in part.

## Background[2]

Stanton operates a salvage and demolition business on property he owns at 308 West Elm Street in Skidmore, Missouri (the property). By September 3, 2021, the City had received four or five nuisance complaints about the property. In response, the City sent a notice-to-abate letter to Stanton.[3] When Stanton did not respond, the City issued an information on September 20, 2021, alleging that, on September 3, 2021, conditions

---

[2] "On appeal in a jury-tried case, we review the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, disregarding evidence to the contrary." *Harned v. Spurlock*, 658 S.W.3d 562, 567 n.1 (Mo. App. W.D. 2022) (quoting *Shuttlewagon, Inc. v. Higgins*, 628 S.W.3d 185, 189 n.1 (Mo. App. W.D. 2021)).

[3] The notice-to-abate letter was neither offered as evidence at trial nor attached to the information.

2

on the property violated the City's Ordinance #2020-Nuisance. The information

identified Stanton by name and the property by address. The information further stated,

> You are hereby summoned to appear personally before this court at the courthouse in Maryville, Nodaway County, Missouri on the 6th day of October, 2021, at 1:30 p.m. to answer a Citation (Information) charging you with violation of Nuisance Ordinance #2020 Sections 6.2, 6.3, 6.8, 6.11, 7.1, 7.2, 7.3, 7.4 and 7.5 of the Ordinance on Friday, September 3, 2021 at 8:00 a.m.

(Capitalization altered from original.) The information, which was signed by the Mayor

of Skidmore and verified by the prosecutor, did not specify the penalty or punishment

sought by the City.

Stanton failed to appear in court on October 6, 2021. Instead, that day he filed a

motion to dismiss and a motion requesting disclosure of information by the City; neither

motion complained of a lack of notice or requested clarification from the City regarding

the nature of the violations alleged.

On February 2, 2022, the City filed a motion for attorney's fees under § 79.383.[4]

The motion asked the court to award the City's attorney's fees upon successful

prosecution of the case.

On April 14, 2022, the Circuit Court for Nodaway County, Skidmore Municipal

Division, held a jury trial in this matter. Before the jury was sworn in, Stanton moved to

dismiss for, among other reasons, failure to plead facts showing that a violation of the

ordinance had occurred. The court later denied that motion.

---

[4] All statutory references are to the Revised Statutes of Missouri, Supp. 2021.

3

The City called one witness—City Clerk Meagan Morrow. She testified that she has personal knowledge of the alleged nuisance violations occurring at the property because she "personally witnessed th[e] propert[y] on a daily basis." She also testified that the notice-to-abate letter sent to Stanton provided a factual basis for the City's belief that Stanton was in violation of the ordinance.

Morrow identified four copies of photographs taken by Jill Wieland, the Mayor of Skidmore, in late summer 2021. The copies, which were admitted into evidence as business records, showed large trucks, semitrailers, an inoperable bus, building materials, and piles of debris and trash on the property. Stanton did not object to admission of the photos. Morrow testified that the condition of the property, as reflected in the photos, was consistent with her personal observations of the property before and after September 3, 2021, the date identified in the information. Lastly, Morrow testified that, between the time the City issued the notice to abate and the information, Stanton did not contact the City to ask about the alleged violations or steps he could take to address them.

Following Morrow's testimony, the City rested and Stanton moved for a judgment of acquittal at the close of the City's evidence. Among other things, the motion argued that the City had failed to plead facts constituting a violation of the ordinance. The court denied the motion.

The jury found Stanton guilty of violating the ordinance. He waived his right to jury sentencing and, instead, elected to have the court decide his punishment. The court held a sentencing hearing on May 18, 2022. Stanton moved for acquittal notwithstanding the verdict or, in the alternative, for a new trial. He again argued that the information was

4

legally insufficient because it did not allege facts. The court denied both motions and ordered Stanton to pay a $500 fine and $8,000 in attorney's fees to the City. The court also issued an injunction requiring Stanton to clean up the property by July 9, 2022.

Stanton appeals. Additional facts will be provided below as necessary to address his claims.

**Analysis**

Stanton raises six points on appeal. First, he asserts the trial court erred in denying his motion to dismiss, motion for judgment of acquittal at the close of the City's case, and motion for judgment of acquittal notwithstanding the verdict/motion for new trial because the charging document failed to state an offense in that it did not plead facts as required by Rule 37.35. Second, he argues the court erred in awarding attorney's fees because there is no statute or contract authorizing fees in this case. Third, he claims the court erred in issuing an injunction because municipal courts lack authority to issue injunctions. Fourth, he contends the court erred in awarding attorney's fees and issuing an injunction because the charging document's prayer for relief did not mention fees or injunctive relief. Fifth, he asserts the court erred in awarding $8,000 in attorney's fees because there was insufficient evidence to support that amount and the amount is unconscionable. Finally, he argues the court erred in denying his motion for acquittal at the close of the City's case and motion for judgment notwithstanding the verdict/motion for new trial because there was insufficient evidence of guilt.

**A. The alleged failure of the information to include specific facts did not prejudice Stanton's substantial rights (Point I).**

In his first point, Stanton asserts the trial court erred in denying various motions because the information did not plead facts as required by Rule 37.35. "[W]hether an information fails to state an offense is a question of law, which we review de novo." *State v. Metzinger*, 456 S.W.3d 84, 89 (Mo. App. E.D. 2015).

"[A]ll municipal ordinance violations must be prosecuted by information." *St. Louis Cnty. v. Heiman*, 441 S.W.3d 160, 162 (Mo. App. E.D. 2014) (citing Rule 37.34). "Rule 37.35 sets forth the requirements for a sufficient charging information." *Id.* Under Rule 37.35, the information must be (1) in writing, (2) signed by the prosecutor, and (3) filed in the court having jurisdiction of the ordinance violation. Rule 37.35(a). Among other things, the information also must "[s]tate plainly, concisely, and definitely the essential facts constituting the ordinance violation charged." Rule 37.35(b)(2).

"Although the requirements in Rule 37.35 are mandatory, '[a]n information shall not be invalid, nor shall the trial, judgment, or other proceedings on the information be stayed, because of any defect that does not prejudice the substantial rights of the defendant.'" *City of Bellefontaine Neighbors v. Carroll*, 597 S.W.3d 335, 343 (Mo. App. E.D. 2020) (quoting Rule 37.41). "[A]n information for a municipal ordinance violation does not require the same strictness as an information in a criminal prosecution." *Heiman*, 441 S.W.3d at 163.

6

We recognize that Rule 37.35 requires the information to include the essential facts constituting the violation. Rule 37.35(b)(2). Regrettably, the City did not meet that requirement. Here, the information charged Stanton with violating Sections 6.2, 6.3, 6.8, 6.11, 7.1, 7.2, 7.3, 7.4 and 7.5 of the ordinance.[5] The information did not include additional facts regarding the violations. While we do not condone the City's failure to comply with Rule 37.35(b)(2), this defect does not prejudice Stanton's substantial rights. *See Heiman*, 441 S.W.3d at 163. In the ordinance context, prejudice of substantial rights means impairment of the defendant's ability to "understand from the information and violation notices the nature of the charge against him so he could . . . prepare a defense." *Carroll*, 597 S.W.3d at 343.

Here, Stanton was able to understand the allegations, assert a defense, offer evidence, and effectively argue his case. As reflected in the Appendix, the specific sections of the ordinance cited in the information provided Stanton with detailed information about the conditions constituting a nuisance on the property. For example, the information refers to Sections 7.1-7.4 of the ordinance, which list junk vehicles, elevated vehicles, unlicensed vehicles, and abandoned vehicles, respectively. The photographs admitted into evidence at trial showed large trucks, semitrailers, and an inoperable bus on the property. And Morrow testified that the condition of the property, as reflected in the photos, was consistent with her personal observations of the property before and after September 3, 2021, the date identified in the information. Morrow also

[5] See the Appendix for the text of these provisions.

7

offered uncontroverted testimony that the notice of abatement sent to Stanton provided a factual basis for the City's belief that Stanton was in violation of the ordinance.

Although Morrow testified that Stanton had contacted the City on numerous occasions in the past to discuss the property, he did not seek clarification from the City following issuance of the notice to abate or the information, nor did he seek a bill of particulars before trial. *See City of Hurdland v. Morrow*, 861 S.W.2d 585, 587 (Mo. App. W.D. 1993) (declining to find reversible error where appellant failed to show how specifically he was prejudiced, *i.e.*, he failed to identify any omissions that prevented him from preparing an adequate defense). Stanton was able to conduct discovery and to participate in motion practice and at trial. And he did not object at trial to the City's introducing evidence of notice.

We find that Stanton was able to understand from the information the nature of the charges against him. The record shows that Stanton was aware of the alleged violations against him and what he needed to do to defend himself; he was able to assert defenses, offer evidence, and make arguments on his behalf. Thus, we conclude Stanton suffered no prejudice as a result of the City's failure to fully comply with Rule 37.35(b)(2). *See Carroll*, 597 S.W.3d at 343 (declining to find omissions in charging documents reversible error because court could not discern that appellant suffered any prejudice).

Because Stanton was not prejudiced by the City's lack of full compliance with Rule 37.35(b)(2), the court did not err in overruling his motions to dismiss, for acquittal at the close of evidence and notwithstanding the verdict, and for new trial.

Point I is denied.

8

**B. Section 79.383 does not authorize the award of attorney's fees in this case (Point II).**

For his second point, Stanton claims the trial court erred in awarding attorney's fees to the City because there is no statute or contract authorizing fees in this case. "Whether a [trial] court has exceeded its authority is a question of law that we review de novo." *Sandknop v. Goldman*, 450 S.W.3d 499, 501 (Mo. App. E.D. 2014).

"The general rule in Missouri is that attorneys' fees are . . . recoverable [only] when a statute specifically authorizes recovery or when attorneys' fees are provided for by a contract." *Schmidt v. Dart Bein LC*, 644 S.W.3d 579, 582 (Mo. App. W.D. 2022) (quoting *Parkway Constr. Servs. v. Blackline LLC*, 573 S.W.3d 652, 666 (Mo. App. E.D. 2019)). The City based its request for attorney's fees on § 79.383, which states, in relevant part,

> 1. If any fourth class city shall enact an ordinance allowing for a civil cause of action for abatement of nuisances created by the accumulation of unsightly, dangerous, or noxious personal property within the borders of such city, the city may, upon successful prosecution of such cause of action, be awarded by the court reasonable attorney's fees incurred in such action.

The City is a fourth-class city, and the City enacted the ordinance, which, among other things, allows actions to address a nuisance. The ordinance authorizes the following penalties/remedies to address nuisance violations:

> 1. Prosecution. Upon conviction of violation of any provision or requirement of this Chapter, the person shall be subject to punishment by a fine not to exceed five hundred dollars ($500.00) or be imprisoned in jail for not more than ninety (90) days or both such fine and imprisonment. It shall be a separate offense for each day the nuisance is allowed or continues to exist.

9

2. Abatement. Upon determination that a nuisance exists, the City may abate the nuisance and assess the costs thereof in accordance with the provisions of this Chapter.

3. Injunction. To eliminate, remove or prevent a nuisance or other violation of this ordinance, the City Attorney may obtain such civil redress as may be appropriate under the circumstances, including restraining orders and injunctions.

An appellate court "interprets ordinances using the same general rules of construction as are applicable to the statutes of the state." *State ex rel. Vandenboom v. Bd. of Zoning Adjustment of Kansas City*, 633 S.W.3d 446, 456 (Mo. App. W.D. 2021) (quoting *Antioch Cmty. Church v. Bd. of Zoning Adjustment of Kansas City*, 543 S.W.3d 28, 35 (Mo. banc 2018)). "Our 'primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue.'" *Id.* (quoting *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)).

Here, the plain language of the ordinance authorizes three separate remedies: (1) a prosecution, which, if successful, could result in a fine or imprisonment;[6] (2) an abatement, which allows the City to remove or stop the nuisance and recoup the associated costs; and (3) an injunction to eliminate, remove, or prevent the nuisance.

The City initiated its case against Stanton by issuing a notice to abate but, when Stanton refused to comply, the City abandoned that track and, instead, pursued a prosecution. It appears that the City did not want to incur the costs of cleaning up the

---

[6] Missouri considers violations of municipal ordinances to be civil matters "but, because of the quasi-criminal nature of an ordinance, [violations] are subject to the criminal standard of proof beyond a reasonable doubt." *City of Bellefontaine Neighbors v. Carroll*, 597 S.W.3d 335, 341 (Mo. App. E.D. 2020) (quoting *City of Dexter v. McClain*, 345 S.W.3d 883, 885 (Mo. App. S.D. 2011)).

property and then attempt to recover those costs from Stanton. Section 79.383 authorizes attorney's fees only in an action for abatement, which is not the case the City filed against Stanton. And the City fails to identify any other authority entitling it to an award of attorney's fees in this case.

Because the City's attorney's fees are not recoverable under § 79.383, the court erred in awarding attorney's fees to the City.

Point II is granted.[7]

### C. The City did not bring a claim for injunctive relief (Point IV).[8]

For his fourth point, Stanton claims the court erred in awarding attorney's fees and issuing an injunction because the charging document's prayer for relief did not mention fees or injunctive relief.[9] Rule 37.35 requires the information to "[c]ite the chapter and section [of the ordinance] providing the penalty and punishment." Rule 37.35(b)(4). The information here cited the ordinance generally but did not cite the section of the ordinance authorizing injunctive relief. While that omission in and of itself might not have been fatal—an issue we need not decide here—the City did not raise the issue of injunctive relief until Stanton's sentencing hearing. Before that, the City did nothing to indicate that it was seeking injunctive relief, and the case proceeded as a quasi-criminal matter tried to a jury. The City did not plead facts that would support an injunction.

---

[7] Because we conclude that attorney's fees are not authorized in this case, we need not reach Point V (challenging the amount of fees awarded).

[8] For ease of discussion, we address Points III and IV out of order.

[9] Because we conclude that attorney's fees are not authorized in this case, we need not address Stanton's claim in Point IV as it pertains to attorney's fees.

Instead, the City pleaded only that Stanton violated the ordinance on a specific date; the City did not plead a continuing violation. And there is nothing in the record to indicate that the issue of injunctive relief was tried by consent. *Cf. Sunbelt Env't Servs., Inc. v. Rieder's Jiffy Mkt., Inc.*, 138 S.W.3d 130, 134 (Mo. App. S.D. 2004) (a court of equity "may grant relief absent an express prayer when such relief is fully supported by the facts that were either pled or tried by consent."). In addition, this case was tried to a jury, and equitable relief is not awarded by juries. And there was no discussion on the record as to how the quasi-criminal and the equitable portions of the case were to be bifurcated. Nor did the City bring an action for an injunction or include a separate count seeking injunctive relief.

Because the City did not raise the issue of injunctive relief until the sentencing hearing, the court erred in granting an injunction in this case.

Point IV is granted.[10]

### D. There was substantial evidence to support the jury verdict of guilt beyond a reasonable doubt (Point VI).

In his final point, Stanton argues the court erred in denying his motion for acquittal at the close of the City's case and motion for judgment notwithstanding the verdict/motion for new trial because there was insufficient evidence of guilt beyond a reasonable doubt. "Where the sufficiency of the evidence is at issue in a jury[-]tried case involving violation of a municipal ordinance, we review the evidence in the light most

---

[10] Because we conclude that the City did not seek injunctive relief as contemplated by the ordinance, we need not reach Point III, which challenges the trial court's authority to issue injunctions in cases involving alleged violations of municipal ordinances.

favorable to the verdict and decide if there was substantial evidence to reasonably support a submissible case." *City of Bolivar v. Lacy*, 147 S.W.3d 834, 839 (Mo. App. S.D. 2004). "We will reverse a judgment based on a jury verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion." *Id.*

Here, Morrow, the City clerk, testified that she has personal knowledge of the alleged nuisance violations occurring at the property because she "personally witnessed th[e] propert[y] on a daily basis." She identified four copies of photographs taken by the City's mayor in late summer 2021. The copies, which were admitted into evidence without objection, showed large trucks, semitrailers, an inoperable bus, building materials, and piles of debris and trash on the property. Morrow also testified that the condition of the property, as reflected in the photos, was consistent with her personal observations of the property before and after September 3, 2021, the date identified in the information.

Stanton offered no evidence contradicting Morrow's testimony. Instead, Stanton argues that, because Morrow was not present when the photos were taken, did not know which day the photos were taken, and did not visit the property on September 3, 2021, her testimony was insufficient to support a guilty verdict. We disagree.

The record contains substantial evidence to support the jury verdict of guilty beyond a reasonable doubt.

Point VI is denied.

13

**Conclusion**

Because the City carried its burden to show that Stanton violated the ordinance, the trial court's imposition of the $500 fine is affirmed. Finding that the trial court erred in both awarding attorney's fees to the City and issuing an injunction against Stanton, the remainder of the trial court's judgment is reversed.[11]

_____
Karen King Mitchell, Judge

Edward R. Ardini, Jr., Presiding Judge, and Lisa White Hardwick, Judge, concur.

---

[11] In its brief, the City requests damages pursuant to Rule 84.19, which states, "If an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." As evidenced by our reversal of part of the judgment, we do not find Stanton's appeal frivolous. Thus, we decline to award Rule 84.19 damages in this case.

**Appendix**

**Excerpts from City of Skidmore Ordinance #2020-Nuisance**

**Section 6.  Nuisance Defined and Exemptions.**

Any condition or item which causes a threat to the health, safety or welfare of the public, or which prohibits routine maintenance of the premises, or which meets any of the definitions of a nuisance in this Chapter shall be declared a nuisance.  The term "nuisance" shall include, but is not limited to:

2.  Debris, refuse, rubbish, trash:  Accumulations of unused boards, bricks, concrete or rocks, animal or vegetable products or matter, appliances, ashes, barrels, bones, bottles, boxes, broken glass, brush, cans, cartons, cinders, coal, crates, decayed fruits or vegetables, dirt, dust, excrement, fence wire, filth, firewood not piled or stacked neatly and systematically (must be in rear yard), flammable materials, foliage and shrub clippings or cuttings, garbage, gasoline, grass, household furniture, iron or other metals, junk, kegs, leaves, logs, lumber not piled or stacked neatly and systematically (must have nails removed and be in rear yard; untreated lumber must be stacked), lumber scraps, manure, nails, offal, oil, old wearing apparel, paint, paper, piled brush and fallen tree limbs or debris, plaster, plastic (discarded containers or wrappers), plumbing fixtures, putrid fish or meat entrails, rags, rank growth of vegetation, roof shingles, rubber, sawdust, slag, slop, soot, straw, sweepings, tacks, tarpaulin not in good repair, tire(s) (mounted or unmounted), toilets, tubs, vehicle parts, weeds, wire, wood or metal shavings, any type of solid or yard waste (bagged or unbagged), or any condition or item that would prohibit the routine maintenance of property.

Exemption:  The term "nuisance" shall not include composting which is a controlled biological reduction of organic waste to humus . . . .

3.  Disease or breeding of insects or vermin:  Any existing condition or item which harbors or fosters the spread of disease or the breeding of insects or vermin.

8.  Prohibited vehicles:  All vehicles declared a nuisance by this Chapter, including junk vehicles, elevated vehicles, unlicensed vehicles, and abandoned vehicles.

11.  Miscellaneous:  Any act done or committed or suffered to be done or committed by any person or any substance or thing kept, maintained, placed or found in or on any public or private place which is annoying or damaging or injurious or dangerous to the public health or welfare or safety and every act or thing done, permitted, maintained, allowed or continued on any property public or private, by any person, which is liable to or does endanger, annoy, damage or

injure any person or any inhabitant of the City or property of said person or inhabitant.

## Section 7. Prohibited Vehicles Defined as a Nuisance.

The following vehicles shall be prohibited and are declared a nuisance:

1.  Abandoned vehicle:  Any unattended motor vehicle, trailer, alternan[t] vehicle or outdoor motor or any vessel removed or subject to removal from a public or private property as provided in this ordinance, whether or not operational, or any motor vehicle on the right-of way of any public road or State highway or on any private property owned by another without the consent of the owner or occupant.

2.  Elevated vehicle:  Any vehicle, licensed or unlicensed, which is raised, but not supported under the axles, or is raised to a height where the tires are more than two (2) inches off the ground.

3.  Junk vehicle:  Any type of self-propelled device or part thereof designed to be self-propelled, that is moved by power, other than human power, is designed to travel along the ground, is located on private property and is damaged, stripped or wrecked or has missing wheels or tires, or flat tires, or broken or missing window glass and located outside of an enclosed structure.  Junk vehicles shall include, but not be limited to, all-terrain vehicles, automobiles, motorcycles, snowmobiles, tractors, trailers, trucks, and wagons.

4.  Unlicensed vehicle:  Any type of self-propelled device, or part thereof, that is moved by power, other than human power, is designed to travel along the ground, is located on private property, located outside of an enclosed structure and does not have showing a current State license plate, or is improperly registered or licensed pursuant to any State or local laws or regulations.  Unlicensed vehicles shall include, but not be limited to, automobiles, motorcycles, trailers and trucks. An unlicensed vehicle shall not be allowed to exist on private property outside of an enclosed structure.

5.  Open storage of inoperable vehicles or public safety hazards prohibited.  The open storage of inoperable or unlicensed vehicles or other vehicles deemed by the City to constitute a public safety hazard is prohibited.  Nothing in this Subsection shall apply to a vehicle which is completely enclosed within a locked building or locked fenced area and not visible for adjacent public or private property, nor to any vehicle upon the property of a business licensed as salvage, swap, junk dealer, towing or storage facility so long as the business is operated in compliance with its business license and the property is in compliance with applicable zoning ordinance.